WEIDNER v. NORTHWAY MOTOR & MANF'G. CO.

1. MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — RE-OPENING CASE—ADDITIONAL COMPENSATION—QUESTIONS FOR DETERMINATION—NOTICE.

On petition by an injured employee to the industrial accident board to reopen his case after final settlement, the board has power to determine at the hearing whether the case should be reopened and also whether additional compensation should be awarded, where both parties were given ample notice and opportunity to present such evidence as they desired.

2. SAME—BURDEN OF PROOF.

In such proceedings, the burden of proof rested upon plaintiff to show that he was entitled to have his case reopened, and that, not having recovered fully from the accidental injury, he is entitled to further payment.

See notes in L. R. A. 1916A, 163, 266; L. R. A. 1917D, 186.

3. SAME—FINDING OF INDUSTRIAL ACCIDENT BOARD—EVIDENCE—
     SUFFICIENCY.
     Evidence *held*, insufficient to support the finding of the
       board that plaintiff was suffering injuries or infirmities
       which were attributable to the accident in question.

Certiorari to Industrial Accident Board. Submitted
January 23, 1919. (Docket No. 99.) Decided May
29, 1919.

Karl Weidner presented his claim for compensation
against the Northway Motor & Manufacturing Compa-
ny, Division General Motors Corporation, for injuries
received in defendant's employ. From an order award-
ing compensation, on petition to reopen the claim after
final settlement, defendant and the Zurich General Ac-
cident & Liability Insurance Company, Limited, in-
surer, bring certiorari. Reversed.

*Kerr & Lacey*, for appellants.

*Joseph L. Ruby* (*Carey J. Cole*, of counsel), for
appellee.

STEERE, J.   On January 5, 1918, Karl Weidner, a
laborer in the employ of the Northway Motor & Man-
ufacturing Company, sustained an admitted industrial
accident, upon the extent and nature of which the
parties are not in harmony.

In the usual course of proceedings under the work-
men's compensation law the accident was reported to
the industrial accident board, an agreement for weekly
compensation on the basis prescribed by the act, at
$8.64 per week during disability, was entered into,
filed with and approved by the board, and all required
or desired medical care and attendance furnished the
injured employee by the company until February 4,
1918; although Dr. Hall, the company's physician, ad-
vised him on January 23, 1918, that he was fully re-

covered from any effects of the accident and able to resume work. He did not, however, report for work until the fore part of March, 1918, following a final settlement for compensation made with him through the defendant insurance company by which the prescribed weekly payment for disability was continued and paid from February 16 to March 4, 1918. A settlement receipt in full, for $70.56, in form prescribed by the accident board was signed by Weidner and filed with the board. A few days later he reported at the motor company's factory to resume work, where he states they wanted him to run the elevator and he refused the job because he was "scart of an elevator," and they said they had other work for him but they did not give it to him, and he did not try for work elsewhere because he was "too sick." Asked, "What is the matter with you?" he replied, "I do not feel good on my left side. Q. In any other place? A. It hurts me to stand long and it hurts me on the right side, but not so much as on the left side."

A written notice to his employer of claim for injury dated April 18, 1918, using the form prescribed for such purpose, states the "nature of the injury" to be "side of body and chest hurt badly causing dry pleurisy."

On June 15, 1918, plaintiff filed a petition with the industrial accident board "to reopen his case, closed by reason of a settlement receipt filed by the Zurich Insurance Co., insurers, acknowledging settlement and payment in full of all compensation," which he claimed he was not able to read and was led to believe was the "ordinary receipt used when compensation is paid." The petition states the circumstances of the accident, certain of the prior proceedings in relation to it; that he was "crushed and severely injured internally," and that "he is now suffering from gastroptosis, or the falling of the stomach" and is yet

unable to work, although he has employed a number of physicians to treat him. Accompanying his petition is a certificate dated May 14, 1918, signed by Dr. Wetherell, certifying that, "I have this day made a physical examination of Karl Weidner and find him suffering from gastroptosis."

A hearing was had upon this petition, testimony taken by deposition being submitted by both parties and considered by the industrial accident board, as it returns, for a double purpose.— *first,* to determine whether the case should be reopened, and, having so determined, *second,* whether further compensation should be awarded. The board decided both inquiries in the affirmative and without filing any finding of facts or reference to the testimony beyond the statement that it found as a fact "from all the files and testimony in the case" that as a result of the accident sustained January 5, 1918, plaintiff was unable to resume his occupation, or earn wages from the time the settlement receipt was signed, and was therefore entitled to continued compensation at the rate of $8.64 per week in accordance with the terms of the first agreement approved by the board on February 26, 1918. This was ordered paid up to July 3, 1918, forthwith, and paid weekly thereafter.

Defendants' counsel contend in their brief that on the petition filed to reopen the case the testimony submitted by the respective parties was directed and limited to that question only, and the board had no power without a further hearing upon the second issue to proceed after reopening the case to a determination of the question whether plaintiff had fully recovered from the effects of his accidental injury and was entitled to additional compensation.

We think that question is disposed of in *Curtis* v. *Slater Construction Co.,* 194 Mich. 259, where the same course was followed, and see no objection to the

rule of procedure adopted by the board in such cases. There is no occasion for multiplying pleadings or duplicating proofs if all parties are given ample notice and opportunity to present such evidence as they desire. The major question which is germane to the entire inquiry is whether the applicant is entitled to further compensation because of disability resulting from an industrial accident. In this case ample opportunity and time were given both parties to take and present such testimony as they desired. The application was filed with the board June 15, 1918. On July 3, 1918, the first depositions were taken for plaintiff, consisting of his own testimony and that of Dr. Wetherell. On July 19, 1918, defendant took the depositions of Dr. Hall and Dr. Panzner. On August 15, 1918, the deposition of Dr. Benmosche was taken at the instance of plaintiff. Each time counsel for the respective parties stipulated as to the method and participated in the examination.

The employer's report of the accident and injury made to the board shortly after the accident as required by the statute states as follows:

"While he was in the elevator with operator and load of motors, injured claims elevator fell one and one-half floors causing motor to fall and as he tried to stop it he injured himself. Muscle strain of back, possible comminuted fracture lumbar vertebrae."

Plaintiff similarly described the accident in his testimony and says he "rolled the trucks away and then crawled out on the second floor." He admitted he resumed work and remained until quitting time, the foreman telling him to use the next elevator. His only description of his injuries or feelings at that time is, "I asked the foreman to go home because I felt weak and my heart went blump, blump, but he said that they were too busy and that I should continue with my work until quitting time. I did so."

He did not resume work at defendant's plant thereafter and it is not questioned that he sustained injuries which incapacitated him for a time, the accident being reported and his incapacity recognized as related.

Dr. Hall, the company's consulting surgeon, and his assistants cared for plaintiff professionally and rendered him such medical care and services as he required. His complaint then was of pain in his back and lower part of his lungs. Dr. Hall testified that he saw plaintiff both at the plant and his office down town and made three careful physical examinations of him, the first on January 18th; that he found him a very well nourished, robust man; could not discover any abrasions, discolorations or other physical injuries, or pain symptoms, but knowing he had been considerably shaken up in the accident, of which he gave an account, and pain itself not being visible, he accepted his word that he suffered pain for the fact and treated him accordingly, seeing him from time to time up to February 4th; that he examined him on January 23d, could find no evidence of any disability, and considering him entirely recovered from any injury reported him able to go to work.

Plaintiff's further medical history comes from three physicians of his own selection whose offices he visited after declining to accept the elevator job and secured their services, to treat or examine him. The first was Dr. Panzner, to whom he went on March 15, 1918, complaining of a pain in the lower part of his chest. Dr. Panzner diagnosed the cause of the pain as a localized dry pleurisy in the lower left part of the chest, involving a small area of probably two or three inches. He testified that plaintiff gave a history of the injury and, as he was complaining of pain in his chest, an X-ray picture was taken of both sides and no fracture was found nor any diseased condition of

the lung or heart; that he appeared to be healthy and everything was found normal, except that he discovered in the front lower part of the left chest what he called "friction ralls," or a "kind of respiration which has been found in conditions of dry pleurisy" and so made that diagnosis, for which they applied adhesive plasters and gave him some internal medicine; that plaintiff called about half a dozen times within the ensuing month, during which he was under their care, and says, "After a week or two, then this pleuritic condition disappeared so that at the end of that time we considered him a cured man." Dr. Panzner, the only physician who discovered dry pleurisy, not only states it was eliminated within a month and plaintiff a cured man, but as there was no fracture, old or otherwise, to traumatize the pleura "it couldn't be due to any injury."

Dr. Wetherell, who furnished the certificate accompanying plaintiff's petition to reopen the case, testified to examining him twice, found no dry pleurisy, but did find a condition of "gastroptosis, or an enlargement and downward displacement of the stomach," which he said was a gradual development and might be caused by "overeating, indigestion, heavy lifting, and a dozen things would cause it." He refused to state or express an opinion that the gastroptosis he diagnosed was traceable to the accident of January 5, 1918. The nearest to an opinion of any answers pointed out or found are:

"*Q.* Do you think that the abnormal condition of this man's stomach is caused by injury?

"*A.* Yes. *   *   *

"*Q.* Would the fall of a heavy body against the stomach of a person cause gastroptosis?

"*A.* It may or it may not."

But even this was negatived by other answers as follows:

"*Q.* And from your examination are you willing to say that this condition resulted from an injury?

"*A.* I could not say it did.   *   *   *

"*Q.* What would you say would cause the injuries complained of by Mr. Weidner?

"*A.* I do not know."

In answer to a hypothetical question by plaintiff's counsel, based on certain facts in the history of the case in connection with his physical examination, he replied, "No, I cannot state that the condition I found was the result of the accident at all."

Dr. Benmosche testified that plaintiff had come to him for treatment about three weeks before; that he took several X-ray pictures and his findings were, "that his stomach is about normal, slightly enlarged, no ulcerations, ptosis of the transverse colon,   *   *   * and a shadow in the region of the gall bladder, which is due to some dense body in the gall bladder."

"*Q.* Did you find any gastroptosis?

"*A.* Very slight if any—not a pathological ptosis."

He also stated that he found the transverse colon "toast," or "fallen lower," which was not at all uncommon. In answer to the question of whether the pressure of a heavy body, of between 300 and 400 pounds, would tend to intensify the conditions he found, he answered that it might. On cross-examination he said he did not wish to be understood that this condition of the bowel was the result of an accident.

This proceeding is an application by plaintiff to *reopen* a case which he states was *closed* by a settlement receipt which he signed acknowledging payment in full. Upon him rested the burden of proof to show both that he was entitled to have his case reopened and that not having recovered fully from the accidental injury he is entitled to further payment. While he alleges in his application that he signed the settlement

receipt under a misapprehension as to what he was signing, the testimony is silent on that subject. He does not so testify, nor that any duress, fraud or misrepresentation was practiced upon him, by any one at the time or that it was not then read to him. Even accepting as proof the allegations in his petition, the situation, except the statement he could not read English, is closely analogous to that in *Winn* v. *Adjustable Table Co.,* 193 Mich. 127, an industrial accident case in which this court said:

"It is not shown that any deceit was practiced by the agent of the insurance company in obtaining the agreement for compensation. Claimant says that he supposed it was a receipt when he signed it, but that he did not ask to have it read, nor did he read it himself, although he was competent to do so. Under these circumstances he will not be heard to deny the validity of the agreement. *Sanborn* v. *Sanborn,* 104 Mich. 180. But such an agreement may undoubtedly be reviewed by the industrial accident board upon a proper showing, under section 13, pt. 3, of the act. (2 Comp. Laws 1915, § 5466)."

The only specific injuries resulting from the accident ever claimed by plaintiff in his notice of claim to defendant or his petition to the board are dry pleurisy and gastroptosis. The first is affirmatively eliminated by the testimony of Dr. Panzner, the only one of the physicians who discovered it. Dr. Wetherell, who testified to gastroptosis, which he said was a gradual development and might be caused by more than a dozen different things, refused to testify that it was caused by, or to venture the opinion it was traceable to, the accident. Dr. Benmosche stated he found plaintiff's stomach normal, though slightly enlarged, and did not want to be understood that the not uncommon falling of the colon which he noticed resulted from the accident. Considered in its most favorable light plaintiff's proof furnishes no legal evidence to support the

finding of the board that his injuries, or infirmities, which plaintiff claimed and sought to prove, resulted from or were attributable to the accident in question.

The order appealed from is therefore reversed.

BIRD, C. J., and OSTRANDER, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.