**Steven NOVOSEL, Plaintiff,**

v.

**SEARS, ROEBUCK AND COMPANY, a New York corporation, Defendant.**

**Civ. A. No. 79–73926.**

United States District Court,
E. D. Michigan, S. D.

Sept. 5, 1980.

disputed incident in the company parking lot. As the plaintiff was leaving work and getting into his car on the evening of January 27, 1979, a security guard drove up and asked to talk with him. The plaintiff drove off without responding. It is alleged that the security officer wanted to talk to the plaintiff about a box he was seen carrying from the store. The plaintiff returned approximately five minutes later, allegedly without the box, and stated that he did not know that it had been a security guard who approached him. Rather, he contended, he thought the car approaching him was driven by the boy friend or husband of a woman he was dating. The plaintiff alleges that the box he carried out of the store was empty. On January 30, 1979, the plaintiff's employment was terminated by Sears.

### A. Wrongful Discharge

The plaintiff alleges that he was wrongfully discharged from employment because his employer had a duty not to terminate him without just cause, which he contended had not been demonstrated. The plaintiff relies on the recent Michigan Supreme Court decision, *Toussaint v. Blue Cross*, 408 Mich. 579, 292 N.W.2d 880 (1980).

As is true in this case, the *Toussaint* court was called upon to construe the obligations of an employer where the employment was for an indefinite or continuous term. The Court held that the general "rule" in these matters is actually a rule of construction rather than one of law. That "rule" is that in the absence of representations or agreements between the parties, terms of employment which are indefinite or continuous are terminable at the will of either party. 408 Mich. at 597, 292 N.W.2d 880. The Court went on to hold that when an employer promises in an employment manual that employees will not be discharged without just cause, the employer by its actions may not discharge an employee without just cause. The Court read the promises and representations of the employer into the contract.

Indeed, *Toussaint* held that company personnel policies and employer assurances can give rise to an employee's reasonable expec-

---

David W. Wright, Bloomfield Hills, Mich., for plaintiff.

Charles C. DeWitt, Jr., Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This action, originally brought in Oakland County Circuit Court, is properly before this court upon a timely filed petition for removal. The plaintiff alleges two causes of action arising out of his termination from employment: wrongful discharge and intentional infliction of emotional distress. The defendant has made a motion to dismiss or for summary judgment.

At the time of his termination, the plaintiff had been a Sears employee for nearly twelve years. He was terminated after a

tation of a just cause prerequisite for termination, which is legally enforceable even though the agreed upon duration of the employment contract is for an indefinite term. 408 Mich. at 598, 292 N.W.2d 880. But *Toussaint* is different from the instant case. The present case does not involve such representations and assurances and, in addition, it falls squarely within an exception noted in the *Toussaint* holding.

Employers are most assuredly free to enter into employment contracts terminable at will without assigning cause. We hold only that an employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract.

408 Mich. at 610, 292 N.W.2d at 890.

\*     \*     \*     \*     \*     \*

If Blue Cross or Masco had desired, they could have established a company policy of requiring prospective employees to acknowledge that they served at the will or the pleasure of the company and, thus, have avoided the misunderstandings that generated this litigation.

408 Mich. at 612, 292 N.W.2d at 891.

\*     \*     \*     \*     \*     \*

Where the employer has not agreed to job security, it can protect itself by entering into a written contract which explicitly provides that the employee serves at the pleasure or at the will of the employer or as long as his services are satisfactory to the employer.

408 Mich. at 612 n.24, 292 N.W.2d at 891.

■ Here, the employment relationship between the plaintiff and the defendant was expressly set out in the employment application, which governs the rights and duties of the parties. The contract, which was signed by the plaintiff, states:

I certify that the information contained in this application is correct to the best of my knowledge and understand that falsification of this information is grounds for dismissal in accordance with Sears, Roebuck and Co. policy. I authorize the references listed above to give you any and all information concerning my previous employment and any pertinent information they may have, personal or otherwise, and release all parties from all liability for any damage that may result from furnishing same to you. *In consideration of my employment, I agree to conform to the rules and regulations of Sears, Roebuck and Co., and my employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of either the Company or myself. I understand that no store manager or representative of Sears, Roebuck and Co., other than the president or vice–president of the Company, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing.* (Emphasis added.)

This type of contract is expressly provided for by *Toussaint.* Therefore, the plaintiff had no right to a just cause determination prior to his severance, and Sears did not abridge any legal duty owed to the plaintiff by terminating his employment in the manner they did. Based on this agreement, there is no way that the plaintiff could reasonably have had a legitimate expectation of a right to a just cause determination prior to termination. For this reason, the plaintiff's cause of action based on wrongful discharge is dismissed.

### B.   Intentional Infliction of Emotional Distress

The Restatement (Second) of Torts § 46 (1965) has been recognized in Michigan as providing guidelines for determining whether a successful cause of action will lie for intentional infliction of emotional distress. *Warren v. June's Mobile Home Village and Sales, Inc.*, 66 Mich.App. 386, 390, 239 N.W.2d 380 (1976); *Frishett v. State Farm Mut. Auto. Ins. Co.*, 3 Mich.App. 688, 143 N.W.2d 612 (1966).

■ Comment g of the Restatement (Second) of Torts states:

The conduct, although it would otherwise be extreme and outrageous, may be

privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.

Restatement (Second) of Torts § 46, Comment g (1965). Since, as noted above, the defendant exercised its legal rights in a permissible fashion when it terminated the plaintiff, the plaintiff's cause of action for intentional infliction of emotional distress must fall.

Even if the defendant were not found to have had a legal right to terminate the plaintiff at will, the guidelines for finding a meritorious cause of action under this second count of the complaint have not been met. As the Restatement and the cases indicate:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Restatement (Second) of Torts § 46, Comment d (1965); *Warren*, 66 Mich.App. at 390–91, 239 N.W.2d 380. The circumstances surrounding the plaintiff's termination do not give rise to a finding of such outrageous conduct "as to go beyond all possible bounds of decency."

It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so.

Restatement (Second) of Torts § 46, Comment h (1965).

Finally, before a successful case for intentional infliction of emotional distress can be made out, there must be a threshold showing by the plaintiff of a certain level of emotional distress. Applying the guidelines of Comment j of the Restatement, this court finds that the plaintiff has failed to make a minimal showing of his having suffered emotional distress.

*The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe.* Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. *The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.*

Restatement (Second) of Torts § 46, Comment j (1965). (Emphasis added.)

Accordingly, after evaluating all the pleadings and supplemental material properly before this court, for the reasons enumerated above, the defendant's motion for summary judgment is granted.

The defendant in this case also requested the court to order disclosure of the name of the "married woman" whose husband, it was alleged, the plaintiff believed to be in the car that approached him in a parking lot. Although the court believes this disclosure should be made should the case continue, since the matter is terminated, no order will be entered on this matter.

So ordered.