(1) Merrill Lynch's motion to amend this Court's Order and memorandum of October 21, 1983, in *Merrill, Lynch v. Thomson*, No. 83–2323–C(4), is DENIED;

(2) All proceedings in this case, including proceedings on Merrill Lynch's preliminary injunction, are STAYED PENDING ARBITRATION;

(3) The parties seek an early setting for arbitration before the New York Stock Exchange arbitration department and proceed with arbitration on an expedited basis. The Court will retain jurisdiction of this action pending arbitration, and if arbitration is not commenced within thirty (30) days from the date of this Order, the parties may reapply to this Court for injunctive relief. *See Coffield v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, unpublished order at 1, LR–C–83 231 (E.D.Ark. Apr. 13, 1983).

### Mary BATCHELOR, Plaintiff,

### v.

### SEARS, ROEBUCK & CO., Defendant.

### Civ. No. 83–1140.

United States District Court, E.D. Michigan, S.D.

Nov. 3, 1983.

L. Rodger Webb, Detroit, Mich., for plaintiff.

Charles C. Dewitt, Jr., Detroit, Mich., for defendant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This action filed by Mary Batchelor, a former employee of defendant Sears, Roebuck and Co. (Sears), stems from defendant's discharge of plaintiff on March 22, 1982. Plaintiff, a resident of Michigan, filed a three count complaint in Wayne County Circuit Court on March 17, 1983. Sears, a New York corporation with its principal place of business in Illinois, removed the action to this Court on March 29, 1983. 28 U.S.C. §§ 1332(a), 1441(a). Count I of the complaint avers that plaintiff's employment was terminated without just cause, in contravention of her employment contract. *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980). Count II alleges that defendant failed to provide plaintiff with a hearing prior to her discharge, in violation of her right to due process of law under the fifth and fourteenth amendments to the Constitution of the United States of America and Article II, section 17 of the Constitution of the State of Michigan. Count III avers either defamation or intentional infliction of emotional distress. Plaintiff has subsequently dismissed Count II in its entirety and that portion of Count III which may have stated a claim for defamation.[1] Thus, Count I and the claim for intentional infliction of emotional distress in Count III are all that remain of the complaint.

This matter is before the Court on defendant's motion for summary judgment on Count I and defendant's motion to dismiss Count III for failure to state a claim. Defendant moves without supporting affidavits for summary judgment on Count I under Rule 56(b). Defendant supported its motion with exhibits and, in its reply brief, with specific references to plaintiff's deposition testimony. Plaintiff has filed affidavits and exhibits in her brief in opposition to the motion.

Before addressing defendant's arguments, the Court deems it appropriate to review the principles that must guide its decision whether to grant summary judgment. Rule 56(c) provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Sixth Circuit recently reiterated the principles governing consideration of a motion for summary judgment in *Watkins v. Northwestern Ohio Tractor Pullers Ass'n*, 630 F.2d 1155 (6th Cir.1980):

> The district Court may grant a motion for summary judgment only if it finds from the whole record before it that there are no material facts which are in dispute. It may not make findings of disputed facts on a motion for summary judgment. The movant has the burden of showing conclusively that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be considered in the light most favorable to the party opposing the motion. The movant's papers are to be closely scrutinized while those of the opponent are to be viewed indulgently.

*Id.* at 1158.

The party moving for summary judgment "bears the burden of clearly establishing the non-existence of any genuine issue of fact material to a judgment in his favor." *United States v. Article of Device* ..., 527 F.2d 1008, 1011 (6th Cir.1976). *See also United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979). If the movant establishes by use of the materials specified in Rule 56(c) that there is no genuine issue of material fact and that he is entitled to judgment as a

---

1. Plaintiff's response to defendant's motion for summary judgment notes that Count II was dismissed with prejudice by stipulation. On Sep-

tember 20, 1983, the Court entered an order dismissing any claim for defamation in Count III with prejudice, pursuant to a stipulation.

matter of law, Rule 56(e) requires that the opponent produce by affidavit or otherwise "specific facts showing that there is a genuine issue for trial." *First National Bank of Arizona v. Cities Services Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1967), *reh. denied,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). *See also Daily Press, Inc. v. UPI,* 412 F.2d 126 (6th Cir.1969), *cert. denied,* 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969); *Bufalino v. Michigan Bell Telephone Co.,* 404 F.2d 1023 (6th Cir.1968); *Doff v. Brunswick Corp.,* 372 F.2d 801 (6th Cir.1966). The Supreme Court addressed the question of how much evidence the opponent must produce to avoid summary judgment in *First National Bank of Arizona v. Cities Services Co., supra:*

> It is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial .... What Rule 56(e) does make clear is that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him.

391 U.S. at 288–89, 88 S.Ct. at 1592–93. However, Rule 56(e) does not require the opponent to show that there is a genuine issue for trial until the movant has demonstrated by use of the materials specified in Rule 56(c) that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *2361 State Corp. v. Sealy, Inc.,* 402 F.2d 370, 375 (7th Cir.1968); *Wright & Miller, Federal Practice & Procedure,* Civil §§ 2727, 2739 (1973).

This Court, in *Summers v. Sears, Roebuck & Co.,* 549 F.Supp. 1157 (E.D.Mich. 1982), and at least two others in this district, *Forrester v. Sears, Roebuck & Co.,* No. 81–73308 (E.D.Mich. Aug. 4, 1982)

(Guy, J.); *Novosel v. Sears, Roebuck & Co.,* 495 F.Supp. 344 (E.D.Mich.1980) (Joiner, J.), have reviewed the significance of the following language contained in the employment application made available to prospective employees by Sears.

> I certify that the information contained in this application is correct to the best of my knowledge and understand that falsification of this information is grounds for dismissal in accordance with Sears, Roebuck and Co. policy. I authorize the references listed above to give you any and all information concerning my previous employment and any pertinent information they may have, personal or otherwise, and release all parties from all liability for any damage that may result from furnishing same to you. *In consideration of my employment, I agree to conform to the rules and regulations of Sears, Roebuck and Co., and my employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of either the Company or myself. I understand that no store manager or representative of Sears, Roebuck and Co., other than the president or vice-president of the Company, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing.* (Emphasis added.)

Each of these cases concluded that the employment contract included the language set forth. As such, the summary judgment motion of Sears was granted in each case. The rationale, in each instance, was that "[t]his type of contractual provision is expressly provided for by *Toussaint* ... and precludes a legitimate expectation of a right to a just cause determination prior to termination." *Summers, supra,* 549 F.Supp. at 1161. Each court concluded that, as a matter of law, the above quoted contractual provision permitted Sears to discharge employees *without* cause.

Plaintiff contends that the same result is inappropriate in the case at hand for three reasons which the Court will now review.

First, plaintiff contends that the application for employment, from which the above quoted language is taken, does not constitute an employment contract; that at most, it is an unenforceable contract to make a contract at a later time. Plaintiff asserts that the application does not represent an offer of employment by Sears and that plaintiff did not accept an offer of employment by completing and signing it.[2] Plaintiff contends that the employment contract was entered into when Sears offered plaintiff employment some two weeks after she submitted her application.

The Court agrees with plaintiff that Sears did *not* make an offer of employment by making available to interested members of the public blank application forms. Thus, plaintiff had no offer to accept when she completed the application. The Court cannot agree, however, that the application is an unenforceable contract to make a contract at a future date. No legal significance attaches to the collection of completed applications by Sears. The issue before the Court is whether the above quoted language, taken from the employment application, ever became part of an employment contract entered into by Ms. Batchelor and Sears. The application represents some of the preliminary negotiations of the parties. The completed application made it known to Sears that plaintiff was available for "any type" of work and that plaintiff would accept employment subject to the terms set forth above. The application was completed on March 23, 1967. On or about April 6, 1967 plaintiff was hired part-time as a bus girl for $60.00.[3] Plaintiff began working shortly thereafter.

■ The Court finds that Sears *offered* plaintiff a position on or about April 6, 1967, when it made known the opening in the cafeteria as a bus girl. The terms of the offer, which became the terms of the employment contract when accepted, included not only the pay scale and the posi-

tion, but also included the provision in the application for employment. When plaintiff accepted employment, it was subject to the terms and conditions set forth in the application for employment. The Court is not aware of any principle of contract law that would preclude an offer from consisting of separate communications. Therefore, the Court concludes that the above quoted language, taken from the employment application, is part of the employment contract Ms. Batchelor had with Sears.

■ Alternatively, the Court notes that the terms and conditions set forth in the employment application can be construed as policy statements of Sears which, under *Toussaint,* would not have to be mutually agreed upon to affect the contractual relationship of the parties.

> We hold that employer statements of policy, such as the Blue Cross Supervisory Manual and Guidelines, can give rise to contractual rights in employees without evidence that the parties mutually agreed that the policy statements would create contractual rights in the employee, and, hence, although the statement of policy is signed by neither party, can be unilaterally amended by the employer without notice to the employee, and contains no reference to a specific employee, his job description or compensation, and although no reference was made to the policy statement in preemployment interviews and the employee does not learn of its existence until after his hiring.

408 Mich. at 614–15, 292 N.W.2d 880. If employers are to be bound by statements of policy favorable to employees under *Toussaint,* they should conversely be allowed to avail themselves of statements of policy which clearly set forth that employees are subject to discharge without cause. The protection afforded employees as a result of *Toussaint* is protection of the

---

**2.** Plaintiff is apparently correct in noting that this is the first time that an employee has challenged the inclusion of the language in the employment application in the employment contract. None of the three cases cited by Sears, *Summers, Forrester* and *Novosel,* frame their

analysis of the terms of the employment contract in the traditional contract concepts of offer and acceptance.

**3.** Presumably $60.00 per week, although it is not clear.

employee's legitimate expectation that a policy of discharge for cause only, set forth in statements of policy or conveyed by agents of the employer, will be enforced. 408 Mich. at 618–19, 292 N.W.2d 880. Accordingly, statements of policy setting forth that the employment relationship is terminable without cause, if not contradicted by other statements, preclude development of an expectation that the employer would discharge only for cause. In the case at hand, defendant's statement of policy in the employment application precludes development of such an expectation. Additionally, plaintiff has failed to direct the Court's attention to any statement of policy which could be construed as contradicting the policy statement contained in the employment application. Thus, there is no question of material fact on this issue.

■ Further, the *Toussaint* court did *not* abolish the traditional concept of an "at will employment contract" in this state. The court held that an at will contract can be modified when the employer, through its agents or its statements of policy, indicates that the employment relationship can be terminated for cause only. Thus, unless the employer has manifested its intent to terminate for cause only, the traditional doctrine of at will employment for contracts of indefinite duration is applicable. Nothing prevents the employer from reducing the doctrine to writing and setting it forth in each of its employment contracts. However, *Toussaint* does *not* require the employer to do so in order to remain free to discharge without cause. The employer can discharge an at will employee without cause without subjecting itself to liability for breach of contract *unless* it modifies the at will employment contract, as the employers did in the two cases before the court in *Toussaint.*

The second issue raised by plaintiff, in her attempt to distinguish *Summers, Forrester* and *Novosel,* and instead line her case up with Touissant, is that Sears represented to her that she would be discharged for cause only. Plaintiff refers to several representations. Plaintiff, in her brief in opposition to the motion, alleges that the personnel officer who interviewed her informed her of the "three main reasons" for which Sears employees are discharged. However, as defendant points out in its reply brief, plaintiff's deposition testimony belies this. At her deposition, plaintiff testified in response to her attorney's inquiry that she was not informed about this at the interview. Further, she testified that no one at Sears ever indicated that she would remain employed by Sears. In a response to defendant's reply brief, filed twenty minutes prior to the scheduled hearing, plaintiff makes the following statement.

Further, as to the putative discrepancies between plaintiff's averments in her brief and her statements at the deposition defendant points to in its Reply Brief, same are directly and completely attributable to defendant's counsel's intimidation of plaintiff in the course of the proceeding. Upon counsel's remonstrations, plaintiff, formerly forthcoming, retreated into a shell and became unresponsive. Ms. Batchelor has in each instance she's been given the full, unrestrained opportunity recounted the same story, the same that is recounted in the statement of facts in her brief. In any event, her attested averments create a question of fact. Defendant's remedy in this regard is impeachment not summary judgment.

■ This is the first time that the Court was informed of this matter. Upon review, plaintiff's position suffers from three infirmities. First, the deposition testimony cited by defendant, and referred to above, was in response to questions posed by plaintiff's attorney. Second, there are no allegations in the complaint relating to the interview plaintiff had with the personnel department. Thus, the Court is unable to find any instance where this version of the facts is repeated. And finally, Rule 30(d) of the Federal Rules of Civil Procedure specifically provides that a party who believes that a deposition "is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party" can object and have the deposition suspended until such time as he

can make a motion to limit the examination. This Court has not been presented with any such motion. Accordingly, it would be improper to address or consider plaintiff's allegations of intimidation.

◼ Plaintiff is attempting to create an issue of fact by denying or impeaching her testimony at deposition. Such a position cannot be sanctioned by this Court. Plaintiff is unable to direct the Court's attention to any matter in the record, other than the statements made in her brief,[4] where she has alleged or testified that she was informed by anyone in personnel about possible reasons for discharge. Thus, the Court concludes that there is no genuine issue of material fact with respect to plaintiff's interview with personnel on or about April 6, 1967.

◼ Plaintiff also contends that the employment contract was modified by the representations of her former manager in the cafeteria. This argument fails to raise an issue of material fact for two reasons. First, the representations alleged to have been made, attested to in plaintiff's deposition testimony, do not in any way imply that plaintiff's employment would be terminated for cause only. Plaintiff's deposition testimony on this matter is as follows: "He just told me, he said, 'Mary, if you get laid off upstairs, I would go to Personnel and see if I can get you back downstairs in the cafeteria.' " This representation simply does not address plaintiff's employment contract with Sears.

◼ The second reason this argument fails is that the terms of plaintiff's employment contract preclude modification except by the president or vice-president of the company. Thus, even if the representations of the manager could be understood as a modification of the no cause provisions

of the contract, Sears would not be bound because the manager was without authority to make any such modification.[5]

◼ Plaintiff additionally contends that a booklet entitled "Introduction to Sears," distributed to new employees, modifies the at will provisions of the employment contract and evidences an intent to discharge for cause only. Plaintiff argues that policy statements in this booklet are the equivalent of statements in the policy manual of defendant Blue Cross & Blue Shield in *Toussaint.* Plaintiff also refers to statements contained in a "Personnel Manual" distributed by Sears. The booklet provides, in pertinent part:

### EMPLOYE RULES

Since you are new to Sears, it is important for you to know what personal conduct is expected of you while on the job. In most instances your own good judgment will tell you what is the right thing to do. However, you should know what specific rules must be followed since violation of these rules may result in termination of your employment:

- *Unsatisfactory performance of your job.*
- Theft.
- Refusal to follow instructions directly related to the performance of your job (example; insubordination).
- Disorderly conduct; reporting for work under the influence of liquor, drugs or other stimulants, or consumption of such substances while on Company premises.
- Obtaining employment on the basis of false or misleading information.
- *Falsifying a timecard by intentionally punching another employe's timecard or*

---

**4.** Plaintiff has submitted an affidavit which avers that she had the "facts" section of the response brief read to her. She further avers that she knows the facts set forth in that section to be true. Defendant has challenged the sufficiency of the affidavit under F.R.Civ.P. 56(e). Despite its technical imperfections, the Court has considered the affidavit, finding that it fails to raise an issue of material fact.

**5.** Plaintiff points out that a contractual provision not to vary the terms of a contract unless agreed to in writing does not preclude a parol bargain to alter the contract. This is an accurate statement of the law. However, it is not relevant to the contract now before the Court. The contract before the Court contains a provision limiting the *individuals authorized to modify the contract,* not the manner in which it may be modified.

intentionally permitting anyone else to punch your timecard.

- Excessive absences or tardiness including absence from your job for two consecutive days without notifying your unit.
- Soliciting or accepting gifts (money or merchandise) in connection with a Company transaction of any kind. Also conducting other than Company business on Company premises without authority.
- Committing, or attempting to commit, deliberate damage to Company property, advocating or taking part in unlawful seizure of, or traspassing on, Company property.

(emphasis added). Section 2301(b) of the manual, as quoted by plaintiff in her response brief, provides, in pertinent part:

[An employee can be terminated if] *his/her* work, deportment, or attitude *are not satisfactory,* (s)he does not measure up to Company standards, or the Company does not have work for him/her.

(emphasis added). Both the booklet and the manual indicate that an employee can be terminated for *unsatisfactory* work performance. Such a provision is a classic example of an at will employment contract terminable for cause *or* no cause

The most that can be stated for plaintiff is that he was employed permanently so long as his services were satisfactory. That his services became unsatisfactory to defendant is sustained by the record in that on several occasions he was found sleeping at his desk. He failed to keep proper check upon the accounts of the drivers and detect shortages existing therein. Immediately prior to his discharge he withdrew sums from the cash drawer and inserted his I.O.U. in lieu thereof.

Under the terms of the contract, defendant could terminate the employment if not satisfied with the services rendered. Whether or not the services were satisfactorily performed was a question to be determined by defendant and not

by the jury. *Koehler v. Buhl,* 94 Mich. 496 [54 N.W. 157].

*Lynas v. Maxwell Farms,* 279 Mich. 684, 685, 689, 273 N.W. 315 (1937). The *Toussaint* court also addressed such a provision.

Where the employer has not agreed to job security, it can protect itself by entering into a written contract which explicitly provides that the employee serves at the pleasure or at the will of the employer or as long as his services are satisfactory to the employer.

408 Mich. at 612 n. 24, 292 N.W.2d 880. Thus, the Court finds that neither the booklet nor the manual raise a question of material fact as to whether the at will nature of plaintiff's employment contract was altered. The booklet and the manual support defendant's position.

■ Plaintiff lastly contends that it has been the consistent practice of the Macomb Mall Sears store to discharge employees only for cause. Nowhere in her brief or her deposition does plaintiff refer to anything other than plaintiff's discussions with other employees about this so called "practice." The *Toussaint* court did address this matter:

While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. No pre-employment negotiations need take place and the parties' minds need not meet on the subject; nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally. *It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and prac-*

*tices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee.* The employer has then created a situation "instinct with an obligation".

408 Mich. at 613, 292 N.W.2d 880 (emphasis added). There is absolutely nothing on the record now before the Court from which the Court could even possibly infer that Sears established an official practice of discharging for cause only. Precisely the opposite is true. The employment contract, the booklet and the manual make it perfectly clear that Sears can discharge an employee without cause. It is difficult for this Court to imagine what more Sears could have done to communicate the at will nature of the employment contract to prospective employees.

Plaintiff cites *Schipani v. Ford Motor Co.,* 102 Mich.App. 606, 302 N.W.2d 307 (1981) in support of its argument that summary judgment is inappropriate where there is evidence of a company policy to discharge for cause only despite language to the contrary in the employment contract. In *Schipani,* the plaintiff raised a question of fact by contending that Ford had orally agreed to employ him until age 65. This Court does not disagree that such an allegation, properly supported, would raise a question of fact. However, as noted throughout this memorandum, there is nothing on record in this case that would support an inference that Ms. Batchelor was ever informed, orally or in writing, that her employment could only be terminated for cause.

▮ Plaintiff's last argument is that the employment contract is unenforceable because it is an adhesion contract. She claims that enforcement would be contrary to public policy. This argument is totally without merit. In *Toussaint,* the Michigan Supreme Court explicitly recognized that at will employment contracts are enforceable.

▮ Plaintiff further attempts to make something out of the fact that plaintiff reads at the third grade level while the employment application grades out at a

seventh or eighth grade level. The law in Michigan is clear.

The stability of written instruments demands that a person who executes one shall know its contents or be chargeable with such knowledge. If he cannot read, he should have a reliable person read it to him. His failure to do so is negligence which estops him from voiding the instrument on the ground that he was ignorant of its contents, in the absence of circumstances fairly excusing his failure to inform himself. 6 R.C.L. pp. 624, 625; *Warren v. Federal Life Ins. Co.,* 198 Mich. 342 [164 N.W. 449]: *Weidner v. Northway Motor, etc., Co.,* 205 Mich. 583 [172 N.W. 574].

*Sponseller v. Kimball,* 246 Mich. 255, 260, 224 N.W. 359 (1929).

Therefore, for the reasons stated above, defendant's motion for summary judgment with respect to Count I will be granted.

Defendant has moved to dismiss Count III for failure to state a claim, F.R.Civ.P. 12(b)(6). Because defendant has submitted matters outside the pleadings relevant to Count III, the Court will treat the motion as one for summary judgment. F.R.Civ.P. 12(b).

In support of its motion, Sears cites *Novosel, supra.* In *Novosel,* in addition to the *Toussaint*-type claim, plaintiff's complaint stated a cause of action for intentional infliction of emotional distress. This Court finds Judge Joiner's opinion particularly instructive with respect to Count III of Ms. Batchelor's complaint.

### B. Intentional Infliction of Emotional Distress

The Restatement (Second) of Torts § 46 (1965) has been recognized in Michigan as providing guidelines for determining whether a successful cause of action will lie for intentional infliction of emotional distress. *Warren v. June's Mobile Home Village and Sales, Inc.,* 66 Mich. App. 386, 390, 239 N.W.2d 380 (1976); *Frishett v. State Farm Mut. Auto. Ins. Co.,* 3 Mich.App. 688, 143 N.W.2d 612 (1966).

Comment g of the Restatement (Second) of Torts states:

> The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.

Restatement (Second) of Torts § 46, Comment g (1965). Since, as noted above, the defendant exercised its legal rights in a permissible fashion when it terminated the plaintiff, the plaintiff's cause of action for intentional infliction of emotional distress must fall.

Even if the defendant were not found to have had a legal right to terminate the plaintiff at will, the guidelines for finding a meritorious cause of action under this second count of the complaint have not been met. As the Restatement and the cases indicate:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Restatement (Second) of Torts § 46, Comment d (1965); *Warren*, 66 Mich. App. at 390–91, 239 N.W.2d 380. The circumstances surrounding the plaintiff's termination do not give rise to a finding of such outrageous conduct "as to go beyond all possible bounds of decency."

> It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so.

Restatement (Second) of Torts § 46, Comment h (1965).

495 F.Supp. at 346–47. Plaintiff's only response to *Novosel* is that it "is ludicrously far afield."

 This Court finds that Sears did nothing more than exercise its legal rights in a permissible way when it discharged the plaintiff. Thus, plaintiff's cause of action must fall. Alternatively, after reviewing all the pleadings, the Court concludes that defendant's conduct could not reasonably be regarded as so extreme and outrageous so as to permit plaintiff to present this matter to be presented to a jury. *Novosel, supra*, 495 F.Supp. at 347. Therefore, defendant's motion for summary judgment on Count III will be granted.

Plaintiff has raised two other issues with respect to Count III which the Court wishes to address. First, plaintiff makes the following statement in her brief in response to the motion. "In further answer, should the Court find the allegations in plaintiff's present Complaint insufficient, plaintiff submits that she should be allowed under Rule 15 to amend her Complaint to include the more specific allegations mentioned above as to this Count." The Court's finding that defendant's conduct is privileged renders such an offer moot. Further, this Court did review the "more specific allegations" included in the brief before concluding that defendant's conduct could not reasonably be found to be extreme and outrageous.

The second issue raised by plaintiff is that this matter ought to be remanded to state court under the abstention doctrine given the arguably unsettled state of controlling law. Plaintiff's concern is directed at whether a cause of action for intentional infliction of emotional distress is recognized in Michigan. This Court found, just as Judge Joiner found in *Novosel*, that such a cause of action is recognized in Michigan. The Court's conclusion that summary judgment is appropriate is not based on the absence of such a cause of action in Michigan, but rather is based on

the privileged nature of defendant's conduct, which defeats such a cause of action.

Therefore, for the reasons stated herein, defendant's motion for summary judgment on both Counts I and III will be granted. An appropriate order shall be submitted.