### WARREN v JUNE'S MOBILE HOME VILLAGE AND SALES, INC.

1. TRIAL—MOTION TO DISMISS—NONJURY TRIAL—COURT RULES—DIRECTED VERDICT.

     A trial court in a nonjury case, when presented with a motion to dismiss after plaintiff's presentation of evidence, may judge credibility, weigh the evidence and decide the case on the merits; the trial court does not view the evidence in a light most favorable to the plaintiff as it would if defendant had moved for a directed verdict (GCR 1963, 504.2).

2. APPEAL AND ERROR—TRIAL—MOTION TO DISMISS—CLEAR ERROR.

     A trial court's ruling on a motion to dismiss will not be overturned on appeal unless it is clearly erroneous, with the evidence manifestly preponderating contrary to the decision.

3. TORTS—INTENTIONAL INFLICTION OF MENTAL DISTRESS—BASIS FOR LIABILITY.

     One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm; where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress (1) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or (2) to any other person who is present at the time, if such distress results in bodily harm.

4. TORTS—INTENTIONAL INFLICTION OF MENTAL DISTRESS—NATURE OF CONDUCT.

     Liability for intentional infliction of mental distress exists only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community; liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

5. TORTS—INTENTIONAL INFLICTION OF MENTAL DISTRESS—PERMISSIBLE CONDUCT.

A person is not liable for intentional infliction of mental distress where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.

6. TORTS—INTENTIONAL INFLICTION OF MENTAL DISTRESS—MOTION TO DISMISS.

A defendant's motion to dismiss an action for intentional infliction of mental distress was properly granted where the cause of plaintiff's mental distress was in question, it is not clear that defendant's conduct was extremely outrageous, and it is possible that the conduct of defendant was based on a legal right.

7. CONTRACTS—IMPLIED IN FACT.

A contract is implied in fact where an intention to contract is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction.

8. CONTRACTS—IMPLIED IN LAW.

A contract implied in law does not require a meeting of minds, but is imposed by fiction of law, to enable justice to be accomplished, even in case no contract was intended.

Appeal from Wayne, Roland L. Olzark, J. Submitted November 12, 1975, at Detroit. (Docket No. 20991.) Decided January 6, 1976.

Complaint by Henry and Stella Warren against June's Mobile Home Village and Sales, Inc., and John June for damages for intentional infliction of mental distress and breach of an implied contract. Defendants moved for dismissal. Motion granted. Plaintiffs appeal. Affirmed.

*Egnor & Hamilton,* for plaintiffs.

*Jaffe, Snider, Raitt, Garratt, & Heuer, P. C.* (by *Peter Sugar),* for defendants.

Before: DANHOF, P. J., and McGREGOR and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Plaintiffs appeal from an order of the Wayne County Circuit Court which, after a bench trial, granted defendants' motion to dismiss pursuant to GCR 1963, 504.2.

Defendant June owns a mobile home village in which plaintiffs have a mobile home. This litigation was the result of a conflict between plaintiffs and defendants which began when defendants allegedly underbilled the tenants in the trailer park for electrical service and subsequently rebilled the tenants to cover the difference. Plaintiff, Stella Warren, allegedly called the Michigan Public Service Commission to register her complaint over the events in the park. This dispute was resolved favorably to the tenants. Prior to this time, the parties had an amicable relationship. According to plaintiffs, the defendant June allegedly began to berate plaintiff Stella Warren and to announce his disdain for her. Defendant later advised the plaintiffs that he might evict them from his trailer park because of their supposed complaints.

By July of 1973 plaintiffs had found a home which they wished to purchase and accordingly advertised their mobile home for sale. A buyer, willing to pay $5,800, was found shortly thereafter. The only contingency in the sale of the mobile home was defendants' approval of the prospective purchasers as new tenants on defendants' mobile home site pursuant to defendants' right to approve new residents. This approval was withheld. Indeed, according to plaintiffs, defendant informed plaintiff Henry Warren that the mobile home would not be

allowed to remain on the lot because of plaintiffs' attitude in response to the electrical charges. The plaintiffs were forced, therefore, to return the money deposit given to them by the prospective mobile home purchasers. Further, they claim that they had to abandon their mobile home because improvements to it rendered the home permanent.

Accordingly, on September 17, 1973, plaintiffs initiated this action by filing a complaint alleging that defendants' actions were retaliatory in nature, and that plaintiffs had been financially damaged as a result of defendants' newly developed animosity for plaintiffs. A reading of plaintiffs' complaint does not disclose the legal theory or theories on which it was based. However, in response to a defense motion for summary judgment, plaintiffs alleged claims sounding in contract implied in fact or law and in infliction of emotional distress. Although it certainly was not required to do so, the trial court apparently treated this response as a clarifying amendment to the complaint. Plaintiffs never filed a motion to amend the complaint. The court then tried the case on these grounds.

Plaintiffs attack the trial court's dismissal as to all three grounds. In ruling on a motion to dismiss in a case tried without a jury, the trial court does not, as it would in a motion for directed verdict, view the evidence in a light most favorable to the plaintiff. *Illenden v Illenden,* 46 Mich App 710; 208 NW2d 565 (1973). Under GCR 1963, 504.2, rather, acting as a trier of fact, it judges credibility and weighs the evidence and decides the case on the merits. As such, its determination will not be overturned on appeal unless it is clearly erroneous, *i.e.,* the evidence manifestly preponderates contrary to its decision. *Buckingham Tool Corp v*

*Evans,* 35 Mich App 74; 192 NW2d 362 (1971). We find that the trial court's decision was not clearly erroneous.

As a guideline for judging claims of intentional infliction of emotional distress, this Court has adopted the standards enunciated in the Restatement of the Law, Torts, 2d, § 46, pp 71–72:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

"(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

"(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

"(b) to any other person who is present at the time, if such distress results in bodily harm."

*Frishett v State Farm Mutual Insurance Co,* 3 Mich App 688; 143 NW2d 612 (1966).[1] The cases on which those rules are based require that liability be found only where the defendant's conduct has been "extreme and outrageous". The Restatement, *supra,* in § 46, comment d, p 73, notes:

"It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability

---

[1] The Court in *Frishett* adopted the language of the first Restatement of the Law, Torts, § 46. We utilize the language of the Restatement of the Law, Torts 2d. We find that this language does not represent a substantive change from that used in *Frishett.* It does, however, more clearly define the applicable law.

has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."

The extreme and outrageous character of a defendant's conduct may arise in a number of situations. It may occur by virtue of an abuse by defendant of a relationship which puts him in a position of actual or apparent authority over plaintiff or gives defendant power to affect plaintiff's interests. The landlord-tenant relationship is one such situation. The tort may arise where defendant acts notwithstanding the knowledge that plaintiff is peculiarly susceptible to emotional distress because of defendant's actions. However, conduct may be privileged under some circumstances. For example, an actor is not liable "where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress". Restatement, *supra*, § 46, comment g, p 76.

In the instant case, plaintiff Stella Warren alleged that she suffered serious emotional and nervous reactions as the result of defendant June's harassment. The actions alleged to have comprised that tort were, according to Stella Warren's testimony: an abrupt change in attitude by defendant in his treatment of the plaintiffs after they questioned his propriety in increasing the electrical charges, his calling them several times "once one

Sunday morning and he got us out of bed and proceeded to scream at both of us", and his going "to the neighbors and he would tell the neighbors that I was a troublemaker and used the word 'bitch' ".

However, a review of the testimony produced by Mrs. Warren on cross-examination would indicate that there were, quite possibly, other explanations for these disorders: namely, an automobile accident, a prior injury, the fact that her mother suffered a stroke and her subsequent inability to help her mother.

In view of this evidence, we cannot find that the court's ruling was clearly erroneous. The causation of Mrs. Warren's distress was in conflict. It is not clear that an unfriendly attitude and name-calling constitute extremely outrageous conduct. It is also possible that defendant June was simply relying on his legal right to refuse a prospective tenant.

Plaintiffs also claim on appeal that the trial court erred in failing to find the existence of an implied contract between the parties. Plaintiffs contended that the contract should have been either implied in fact or in law. A contract is implied in fact where an intention to contract

"is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction." *Erickson v Goodell Oil Co, Inc,* 384 Mich 207, 212; 180 NW2d 798 (1970).

A contract implied in law, or quasi-contract, "does not require a meeting of minds, but is imposed by fiction of law, *to enable justice to be accomplished,* even in case no contract was intended". *Cascaden*

*v Magryta,* 247 Mich 267, 270; 225 NW 511 (1929). (Emphasis supplied.)

The very nature of these claims emphasizes the importance of a trial judge's role. As fact finder, his ability to assess the credibility of witnesses before him is crucial in determining whether the parties intended to make a contract. His general equitable role is vital in determining whether a contract shall be implied to avoid injustice. In these cases, we are loathe to disturb the trial court's decision. In the instant case, we find that the court's decision as to both of plaintiffs' claims was amply supported by the evidence, and we affirm it.

Affirmed. Costs to defendants.