ATKINSON v FARLEY

Docket No. 95953. Submitted June 9, 1988, at Detroit. Decided October 3, 1988.

James Atkinson brought an action in the Oakland Circuit Court against Michigan Mutual Insurance Company and Glenn Farley, one of its claims examiners, alleging intentional infliction of emotional distress. Defendants moved for summary disposition for failure to state a claim. The court, Frederick C. Ziem, J., denied the motion and defendants appealed by leave granted.

The Court of Appeals *held:*

To make a prima facie case of intentional infliction of emotional distress a plaintiff must show 1) extreme and outrageous conduct, 2) intent or recklessness, 3) causation, and 4) severe emotional distress. The extreme and outrageous character of conduct necessary to support a cause of action for intentional infliction of emotional distress may arise from the position of the actor or a relationship to the distressed party, i.e., it may occur through an abuse of a relationship which puts the defendant in a position of actual or apparent authority over a plaintiff or gives a defendant power to affect a plaintiff's interest. Plaintiff alleged more than merely a refusal to pay benefits. He alleged facts indicating that defendants were in a position of control over plaintiff's sole source of income and knowingly abused their position in a course of conduct to harass and intimidate plaintiff to gain an economic benefit for the insurance company. Taking plaintiff's allegations as true, plaintiff's claim was not so clearly unenforceable as to preclude a right to recover as a matter of law under any factual development.

Affirmed.

1. JUDGMENTS — SUMMARY DISPOSITION — COURT RULES.
    A court, when ruling on a motion for summary disposition on the

REFERENCES

Am Jur 2d, Fright, Shock, and Mental Disturbance § 43.

Am Jur 2d, Summary Judgment §§ 35, 36.

Modern status of intentional infliction of mental distress as independent tort, "outrage". 38 ALR4th 998.

ground that the opposing party has failed to state a claim upon which relief can be granted, should accept as true all of the nonmoving party's factual allegations as well as any conclusions which can reasonably be drawn therefrom and determine whether the nonmoving party's claim on the pleadings is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery (MCR 2.116[C][8], GCR 1963, 117.2[1]).

2. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

To make a prima facie case of intentional infliction of emotional distress a plaintiff must show 1) extreme and outrageous conduct, 2) intent or recklessness, 3) causation, and 4) severe emotional distress.

3. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS — EXTREME AND OUTRAGEOUS CONDUCT.

The extreme and outrageous character of conduct necessary to support a cause of action for intentional infliction of emotional distress may arise from the position of the actor or a relationship to the distressed party, i.e., it may occur through an abuse of a relationship which puts the defendant in a position of actual or apparent authority over a plaintiff or gives a defendant power to affect a plaintiff's interest.

4. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS — EXTREME AND OUTRAGEOUS CONDUCT.

Whether a defendant's acts were sufficiently outrageous to support a cause of action for intentional infliction of emotional distress depends upon the context in which the defendant committed them.

*Charles G. Gale,* for plaintiff.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Roger F. Wardle* and *Timothy F. Casey*), for defendants.

Before: KELLY, P.J., and GRIBBS and C. W. SIMON,* JJ.

KELLY, P.J. Defendants appeal the trial court's denial of their motion for summary disposition.

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff filed suit against defendants for intentional infliction of emotional distress. Defendants moved for summary disposition for failure to state a claim under MCR 2.116(C)(8), arguing that plaintiff's complaint failed to allege facts indicating that defendants' conduct was extreme and outrageous. The trial court denied defendants' motion for summary disposition. We affirm.

Plaintiff's complaint alleges the following facts. Defendant Michigan Mutual is an insurer obligated to pay workers' compensation benefits to plaintiff James Atkinson. Defendant Farley is a claims examiner for defendant Michigan Mutual. Michigan Mutual commenced paying plaintiff workers' compensation benefits in 1971, then terminated plaintiff's benefits in 1982. Plaintiff then filed a petition for a hearing with the Bureau of Workers' Disability Compensation. Michigan Mutual reinstated plaintiff's disability benefits after a mediation hearing, then terminated his benefits again in January, 1983.

After a hearing held in August, 1983, the hearing referee ruled that plaintiff was entitled to $130 per week in workers' compensation benefits. Michigan Mutual filed an appeal with the Workers' Compensation Appeal Board and reinstated plaintiff's benefits pending appeal.

On October 17, 1985, defendant Farley wrote plaintiff requesting information from plaintiff regarding his receipt of pension benefits, and informed plaintiff that defendants could coordinate those benefits with plaintiff's workers' compensation insurance benefits. Farley wrote plaintiff again on October 18, 1985, requesting the identity of plaintiff's pension fund and advising plaintiff that defendants would seek to recoup any overpayments to plaintiff. Defendants failed to send copies of these letters to plaintiff's attorney despite the

fact that defendants knew that plaintiff was represented by counsel. Defendants also knew that plaintiff had little education, that plaintiff relied on his benefits to support himself and his wife, and that plaintiff had no other income when defendants previously terminated his benefits.

On October 23, 1985, plaintiff's counsel wrote defendant Farley admonishing defendants to send all future correspondence through counsel, and provided defendants with the requested information. On December 2, 1985, defendants reduced plaintiff's weekly benefits from $130 per week to $11.88 per week without any notice to plaintiff's attorney. On December 3, 1985, Farley wrote plaintiff directly, again bypassing his counsel, and informed plaintiff that defendants had overpaid him by $7,788.50, which he must repay within thirty days, despite the fact that the most plaintiff could even possibly owe Michigan Mutual was $2,511.60. Defendants knew that their insured had contributed less than ten percent of the total contributions to plaintiff's pension plan fund, yet claimed full credit for plaintiff's total monthly pension benefit of $226.27 per month to "coordinate" those benefits with plaintiff's disability benefits.

Plaintiff's complaint then alleged intentional infliction of emotional distress; that defendants had engaged in a deliberate pattern of harassment by unilaterally reducing his benefit to an inadequate amount, by communicating to plaintiff directly rather than through his counsel, by taking advantage of plaintiff's limited education by citing legal authority purportedly allowing defendants to reduce plaintiff's benefits and demand reimbursement, and by ordering plaintiff to reimburse to defendants a huge sum which defendants knew they were not owed. Plaintiff alleged that defen-

dants' actions were done with the intent to deceive and defraud him, and to cause him to suffer great economic hardship and mental and emotional anguish and distress.

Defendants moved for summary dismissal of plaintiff's claim under MCR 2.116(C)(8), on the basis that plaintiff's complaint failed to state a claim. Defendants argued that plaintiff's complaint failed to allege the extreme and outrageous behavior necessary to state a claim for intentional infliction of emotional distress. The trial court denied defendants' motion.

Defendants claim that the trial court erred by denying their motion for summary disposition. A motion for summary disposition for failure to state a claim under MCR 2.116(C)(8) is tested by the pleadings alone, with all factual allegations taken as true; the motion should be denied unless the alleged claims are clearly so unenforceable as a matter of law that no factual development could possibly justify a right to recovery. *Velmer v Baraga Area Schools,* 157 Mich App 489, 495; 403 NW2d 171 (1987), lv gtd 428 Mich 910 (1987).

In *Roberts v Auto-Owners Ins Co,* 422 Mich 594; 374 NW2d 905 (1985), the Supreme Court addressed the tort of intentional infliction of emotional distress in the context of the denial of insurance benefits. The Court decided that, because the plaintiff failed to meet the threshold requirements of proof to make a prima facie claim of intentional infliction of emotional distress, the Court would not reach the issue of formally adopting this tort into Michigan jurisprudence. *Id.,* p 597. Despite the lack of imprimatur, the Court did set forth four elements required to make up a prima facie claim: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Id.,* p 602. The

Court underscored the formidable threshold for extreme and outrageous conduct:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice", or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. [Restatement Torts, 2d, § 46, comment d, pp 72-73.]
>
> . . . The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress. [Restatement Torts, 2d, § 46, comment g, p 76.] [*Roberts, supra,* p 602-603.]

The Court also noted:

> The foregoing principles do not preclude recovery for an insurer's intentional infliction of emotional distress. . . . [However], mere failure to pay a contractual obligation, without more, will not amount to outrageous conduct for purposes of this tort. [*Roberts, supra,* p 605.]

Defendants claim that plaintiff's complaint failed to allege sufficient facts showing that defendants' conduct was extreme and outrageous.

An insurer's wrongful, bad faith termination of benefits, by itself, is not sufficiently outrageous to support a claim for intentional infliction of emotional distress. *Roberts, supra,* p 605; *Lisecki v Taco Bell Restaurants, Inc,* 150 Mich App 749, 755; 389 NW2d 173 (1986), lv den 426 Mich 852 (1986). However, here plaintiff alleged that defendants engaged in a deliberate pattern of harassing plaintiff by terminating his benefits, by unilaterally reducing benefits to the inadequate amount of $11.88 per week in violation of a board ruling that he was entitled to $130 per week, and by demanding that the plaintiff repay defendants a large sum of money to which defendants knew they were not entitled.

In *Margita v Diamond Mortgage Corp,* 159 Mich App 181, 189-190; 406 NW2d 268 (1987), a panel of this Court noted:

> The extreme and outrageous character of the conduct may arise from the position of the actor or a relationship to the distressed party. *Ledsinger* [*v Burmeister,* 114 Mich App 12, 19; 318 NW2d 558 (1982)]. For example, it may occur through an abuse of a relationship which puts the defendant in a position of actual or apparent authority over a plaintiff or gives a defendant power to affect a plaintiff's interest. *Warren v June's Mobile Home*

*Village & Sales, Inc,* 66 Mich App 386, 391; 239 NW2d 380 (1976). Whether a defendant's acts were sufficiently outrageous depends upon the context in which the defendant committed them.

See also *Bhama v Bhama,* 169 Mich App 73, 80; 425 NW2d 733 (1988).

Plaintiff's complaint alleges facts indicating that defendants were in a position of control over plaintiff's sole source of income, and knew that plaintiff was extremely dependent upon receipt of his disability benefits, yet abused their position by interfering with plaintiff's benefits, by ignoring the requirement to deal with his attorney, by threatening to cut off plaintiff's benefits, and by demanding that plaintiff repay them a large sum of money. The complaint alleges that defendants were abusing their control of plaintiff's income in order to harass and intimidate him to gain economic benefit for the insurance company. Instead of waiting for their appeal to go through or attempting to coordinate plaintiff's benefits in a permissible manner, defendants are said to have arbitrarily decided that plaintiff's benefits would be reduced to $11.88 per week and that he owed them $7,788.50, payable within thirty days. The perception of economic disaster is intimidating to most males (e.g., the Wall Street crash of October, 1929) and a trier of fact should assess the allegations of deliberate, malicious infliction of economic destitution. In this context, defendants' actions could be considered extreme and outrageous.

Taking plaintiff's allegations as true, plaintiff's claim is not so clearly unenforceable as a matter of law that no factual developments could possibly justify a right to recover.

Affirmed.