David G. MROZ, Plaintiff–Appellant,

v.

T. Darrell LEE, Defendant–Appellee.

No. 92–2055.

United States Court of Appeals,
Sixth Circuit.

Argued June 11, 1993.

Decided Oct. 4, 1993.

David R. Parker (argued and briefed), Charfoos & Christensen, Detroit, MI, for plaintiff-appellant.

Eric G. Flinn (argued and briefed), Stewart, Lascoe, Nowack, Maceroni & Flinn, Sterling Heights, MI, John P. Frazer, Mount Clemens, MI, for defendant-appellee.

Before MERRITT, Chief Judge, and JONES and NELSON, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff–Appellant David G. Mroz appeals the dismissal of his claim of intentional infliction of emotional distress brought against Defendant–Appellee T. Darrell Lee. We reverse the dismissal and remand the case for further proceedings.

**I**

Mroz was a Michigan certified public accountant who got to know Lee first as a client, then as a business associate and personal acquaintance. They became involved in certain business ventures, including Tubby's Sub Shops of Florida, Inc. ("Tubby's"), and Martin Tool & Machine, Inc. ("Martin Tool"). Mroz alleges that, beginning in 1988, Lee undertook to destroy him financially, professionally and emotionally. In his Complaint filed April 11, 1991, in the United States District Court for the Eastern District of Michigan,[1] Mroz alleged that Lee:

—upon Mroz's release from an alcoholism treatment program, sent Mroz a "welcome

1. Jurisdiction was predicated on diversity of citizenship.

home" present which included a bottle of alcohol;

—put Mroz in situations where Mroz would resume consumption of alcohol after a hiatus following a bout with alcoholism;

—encouraged, promoted and arranged for the repossession of Mroz's Corvette, and subsequently purchased it and resold it to Lee's own daughter;

—enticed Mroz to move his accounting offices to the Martin Tool business premises, and proceeded to cause the removal of Mroz's client files and then evicted Mroz without legal process;

—hired Mroz's only full-time certified public accountant and bookkeeper;

—encouraged, promoted and arranged for the repossession of Mroz's boat;

—told clients and friends of Mroz that Mroz was a drug user and had stolen money from Tubby's and Martin Tool;

—filed false criminal embezzlement charges against Mroz;

—after having conducted the aforementioned activities, called Mroz and said, "Now, I've got you where I want you, mother-fucker. I going to get everything you have. I'm going to watch you squirm.";

—chased and physically attacked Mroz on the premises of Martin Tool;

—kicked and dented the door of Mroz's van and struck the driver's side window while Mroz was in the van;

—with knowledge that Mroz's daughter was a gymnast, told Mroz that "he would break her legs";

—"har[ ]assingly and threateningly" telephoned Mroz's residence over 250 times;

—called Mroz's mother and encouraged her to sever all emotional and financial ties with Mroz;

—used his "political influence" to ensure that Mroz was bound over for trial on the embezzlement charges mentioned above; and

—encouraged and promoted the prosecution of Mroz for embezzlement by various means, including taking the investigating authorities fishing.

J.A. at 8–15 (Complaint at 2–9). Mroz contends that these actions directly and proximately resulted in, *inter alia*, the loss of his accounting practice, the loss of business interests, his return to alcoholism, and "psychiatric injury." *Id.* at 15 (Complaint at 9). He maintains that these allegations state a claim of intentional infliction of emotional distress under Michigan common law. Lee denied all of the factual allegations that hinted of wrongdoing on his part. *See* R. 3 at 2–3 (Lee's Answer to Complaint).

On February 10, 1992, Lee filed a motion to dismiss the case and for summary judgment [hereinafter Motion to Dismiss]. In it, Lee maintained:

> 2. Plaintiff's Count I claim, entitled 'Intentional Infliction of Emotional Distress', fails to state a claim upon which relief can be granted ... and there is no genuine issue as to any material fact, therefore, Defendant is entitled to dismissal of Plaintiff's Count I claim and Summary Judgment as to that Count, pursuant to FRCP 12(b)(6) and 56, for the specific reasons set forth in the accompanying brief.

J.A. at 37–38 (Motion to Dismiss at 1–2). In his brief supporting his motion [hereinafter Brief in Support], Lee argued:

> It is Defendant's contention that none of the allegations set forth [in Mroz's Complaint and paraphrased in this Brief in Support] state a claim that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community". *Warren v. June's Mobile Home Village & Sales, Inc.,* [66 Mich.App. 386, 239 N.W.2d 380, 383 (1976) (quoting *Restatement (Second) of Torts* § 46 cmt. d (1965)) ]. Therefore, Defendant is entitled to an Order of Dismissal of Plaintiff's Count I claim pursuant to [Fed.R.Civ.P.] 12(b)(6).

J.A. at 48–49 (Brief in Support at 4–5).

Mroz responded on February 24, 1992, contending:

> [P]laintiff has stated a claim of intentional infliction of emotional distress upon which relief can be granted. Cases exist where a

court can decide that behavior was not outrageous as a matter of law. However, here defendant deliberately misinformed plaintiff's business associates that plaintiff engaged in criminal behavior, deliberately used this misinformation to manipulate the legal and financial system to plaintiff's great detriment, and personally threatened the safety of plaintiff and plaintiff's family. Such must be deemed outrageous as a matter of law, or, at the very least, such raises a jury issue as to their [outrageousness].

*Id.* at 65 (Plaintiff's Response to Defendant's Motions to Dismiss and for Summary Judgment [hereinafter Plaintiff's Response] at 2); *see also id.* at 77–79 (Brief in Opposition to Defendant's Motions to Dismiss and for Summary Judgment [hereinafter Brief in Opposition] at 8–10).

On May 22, 1992, the district court, in a Memorandum Opinion and Order [hereinafter Order], dismissed Count I of the Complaint, the count alleging intentional infliction of emotional distress. The district court wrote:

In his complaint, plaintiff alleges a litany of conduct by defendant which he claims was "extreme and outrageous." [A footnote listing examples of such conduct is provided here.] Defendant contends that, assuming the Michigan Supreme Court recognized such a cause of action, none of the various allegations state a claim that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Warren v. June's Mobile Home Village & Sales, Inc.,* 66 Mich.App. 386 [239 N.W.2d 380] (1976). This Court agrees. [A footnote dismissing Lee's contention that Count I of the Complaint is time-barred is provided here.]

Even assuming all of plaintiff's charges as true, and that Michigan law recognizes such a tort, this Court holds that defendant's alleged conduct was not extreme and outrageous as a matter of law. [A footnote presumably describing why a few of Mroz's allegations should not be considered extreme and outrageous is provided here.] *See Sawabini v. Desenberg,* 143 Mich.App. 373, 383 [372 N.W.2d 559] (1985). Defendant's motion regarding Count I of plaintiff's complaint is thus GRANTED.

J.A. at 25–26 (Order at 3–4).

Though other counts of Mroz's Complaint were not dismissed, Mroz desired to appeal the district court's adverse ruling as to Count I. He thus moved, on June 12, 1992, for entry of judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Finding no just reason for delay, the district court granted this motion and ordered that final judgment be entered as to Count I of the Complaint on August 6, 1992. Mroz filed his Notice of Appeal on August 13, 1992.

## II

### A

The Supreme Court of Michigan has not yet recognized the tort of intentional infliction of emotional distress. *See Roberts v. Auto–Owners Ins. Co.,* 422 Mich. 594, 374 N.W.2d 905, 906 (1985) ("[w]e are constrained from reaching the issue of whether [the tort of intentional infliction of emotional distress] should be formally adopted into our jurisprudence"). The Court of Appeals of Michigan has, however, consistently recognized the tort. *See, e.g., Linebaugh v. Sheraton Michigan Corp.,* 198 Mich.App. 335, 497 N.W.2d 585, 588–89 (1993); *Atkinson v. Farley,* 171 Mich.App. 784, 431 N.W.2d 95, 96–98 (1988); *Bhama v. Bhama,* 169 Mich.App. 73, 425 N.W.2d 733, 735–36 (1988); *Dickerson v. Nichols,* 161 Mich.App. 103, 409 N.W.2d 741, 743 (1987); *Margita v. Diamond Mortgage Corp.,* 159 Mich.App. 181, 406 N.W.2d 268, 271–72 (1987); *Cebulski v. City of Belleville,* 156 Mich.App. 190, 401 N.W.2d 616, 618–19 (1986); *Sawabini v. Desenberg,* 143 Mich. App. 373, 372 N.W.2d 559, 565 (1985); *Rosenberg v. Rosenberg Bros. Special Account,* 134 Mich.App. 342, 351 N.W.2d 563, 567–69 (1984); *Ledl v. Quik Pik Food Stores, Inc.,* 133 Mich.App. 583, 349 N.W.2d 529, 532–33 (1984); *Ledsinger v. Burmeister,* 114 Mich.App. 12, 318 N.W.2d 558, 561–62 (1982); *Warren v. June's Mobile Home Village & Sales, Inc.,* 66 Mich.App. 386, 239 N.W.2d

380, 382 (1976). The Court of Appeals of Michigan has generally adopted the elements of the tort as set forth in Section 46 of the *Restatement (Second) of Torts* (1965): "(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *See, e.g., Dickerson,* 409 N.W.2d at 743; *Cebulski,* 401 N.W.2d at 618; *Rosenberg,* 351 N.W.2d at 567; *Ledl,* 349 N.W.2d at 532; *Ledsinger,* 318 N.W.2d at 561. Comment d to this section construes the scope of this tort narrowly:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be some freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

*See Atkinson,* 431 N.W.2d at 97 (quoting this commentary); *Bhama,* 425 N.W.2d at 735 (same); *Margita,* 406 N.W.2d at 271 (same); *Roberts,* 374 N.W.2d at 908–09 (same); *Warren,* 239 N.W.2d at 383 (same).

The Sixth Circuit has consistently assumed this tort to exist under Michigan law. *See, e.g., Pratt v. Brown Mach. Co.,* 855 F.2d 1225, 1238–39 (6th Cir.1988); *Coogan v. City of Wixom,* 820 F.2d 170, 173–74 (6th Cir. 1987); *Ross v. Burns,* 612 F.2d 271, 273–74 (6th Cir.1980); *Baker v. Meredith Corp.,* 978 F.2d 1258 (6th Cir.1992) (unpublished opinion per curiam). Since we are not convinced that the Supreme Court of Michigan would reject the conclusions and analysis of the Court of Appeals of Michigan relating to this tort, we continue to follow the lead of the latter court. *See West v. American Tel. & Tel. Co.,* 311 U.S. 223, 236–37, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940) ("[A] federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable.... Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."); *FL Aerospace v. Aetna Casualty & Sur. Co.,* 897 F.2d 214, 218–19 (6th Cir.), *cert. denied,* 498 U.S. 911, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990); *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1140 (6th Cir.1986).

**B**

 We conclude that the district court erred in determining, as grounds for dismissing Count I in its entirety, that the allegations in Mroz's Complaint, as a matter of Michigan law, could not be considered extreme and outrageous conduct for purposes of the tort of intentional infliction of emotional distress. In assessing whether the alleged conduct is sufficiently extreme and outrageous, we are to look to the context of the alleged conduct, to the totality of the circum-

stances. *See, e.g., Bhama,* 425 N.W.2d at 736; *Margita,* 406 N.W.2d at 272; *Rosenberg,* 351 N.W.2d at 568; *Ledsinger,* 318 N.W.2d at·561. In this regard, we may pay particular attention to whether there is an "abuse of a relationship which puts the defendant in a position of actual or apparent authority over a plaintiff or gives a defendant power to affect a plaintiff's interest," *Margita,* 406 N.W.2d at 272, and to whether the defendant preys on "knowledge of peculiar susceptibilities of the distressed party," *Ledsinger,* 318 N.W.2d at 562. *See also Warren,* 239 N.W.2d at 383. In the instant case, Mroz alleges facts from which a reasonable person might infer an abuse of such a relationship or a preying upon Mroz's peculiar susceptibilities. Moreover, much of the alleged conduct, even viewed in the abstract, might cause an average member of the community to exclaim, "Outrageous!" We hold that Mroz, in Count I taken as a whole, sufficiently alleged extreme and outrageous conduct for purposes of the tort of intentional infliction of emotional distress under Michigan common law to proceed further with the claim. *Compare Linebaugh,* 497 N.W.2d at 588–89 (it was reversible error to grant summary judgment against plaintiff on claim of intentional infliction of emotional distress where defendant-co-worker circulated cartoon depicting plaintiff and co-worker (not plaintiff's husband) engaging in sexual act; "Once having viewed the cartoon at issue, a reasonable factfinder could conclude that the depiction of plaintiff engaged in a sexual act with a co-worker constitutes conduct so outrageous in character and so extreme in degree that it goes beyond all bounds of common decency in a civilized society.... The question whether [defendant-co-worker's] conduct was sufficiently outrageous and extreme so as to render him liable for intentional infliction of emotional distress is a matter for determination by the trier of fact."); *Atkinson,* 431 N.W.2d at 96–98 (allegations that insurer engaged in deliberate pattern of harassing plaintiff by terminating and threatening to terminate plaintiff's workers' compensation benefits, reducing benefits to minuscule amount in violation of Workers' Compensation Appeals Board ruling, bypassing plaintiff's attorney, and demanding that plaintiff pay it large sum of money to which it knew it was not entitled created issue of fact as to whether alleged conduct could be considered extreme and outrageous; thus, case was properly submitted to factfinder for resolution); *Bhama,* 425 N.W.2d at 734–36 (allegations that defendant, who was divorced from plaintiff, used his training in psychiatry over extended period of time to cause their two children to turn against plaintiff were sufficient to create question for trial as to whether defendant's conduct was extreme and outrageous for purposes of tort of intentional infliction of emotional distress; it was thus reversible error to dismiss this claim before trial); *Dickerson,* 409 N.W.2d at 741–43 (evidence that defendant accused plaintiff of being management stool pigeon, claimed that plaintiff was having illicit affair with co-worker, and harassed plaintiff and his family over phone could constitute sufficiently extreme and outrageous conduct for purposes of tort of intentional infliction of emotional distress, such that jury's finding of liability would not be disturbed); *Margita,* 406 N.W.2d at 269–72 (allegations of mortgagee's continuous and unnecessary harassment through letters and telephone calls over roughly two-year period, in attempt to collect debt that was not overdue, presented fact question as to whether such conduct was extreme and outrageous under circumstances, such that dismissal was inappropriate before submitting case to trier of fact); *Rosenberg,* 351 N.W.2d at 567–69 (allegations of 26 instances of defendant's exerting position of power over recently widowed plaintiff to "browbeat" her into selling her business interest in her late husband's estate could be sufficiently extreme and outrageous to support claim of intentional infliction of emotional distress; summary judgment was thus inappropriate); *Ledsinger,* 318 N.W.2d at 561–62 (use of racial slurs in course of throwing plaintiff out of defendant's retail store could be considered extreme and outrageous conduct under circumstances, such that summary dismissal of related claim of intentional infliction of emotional distress was error). It was thus error to find, as a matter of Michigan law, that Mroz did not sufficiently allege conduct which could constitute extreme and outrageous conduct for purposes of the tort

 

of intentional infliction of emotional distress, and to dismiss Count I on that basis.

## III

On the basis of the foregoing, the district court's decision is REVERSED and the case REMANDED for further proceedings.