**David G. MROZ, Plaintiff,**

v.

**T. Darrell LEE, Defendant.**

**No. 91–CV–71590.**

United States District Court,
E.D. Michigan,
Southern Division.

April 19, 1995.

---

Robert L. Hindelang, Grosse Pointe Farms, MI, L.S. Charfoos, Detroit, MI, for plaintiff.

John P. Frazer, III, Mt. Clemens, MI, Richard G. Porter, Dearborn, MI, Eric G. Flinn, Sterling Heights, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This matter is before the Court on defendant T. Darrell Lee's Renewed Motion for Judgment as a Matter of Law, pursuant to Fed.R.Civ.P. 50(b), as well as on defendant's Motion to Substitute the Bankruptcy Trustee as Plaintiff. Plaintiff Mroz has filed a response to each motion. Defendant has replied in the matter of the Motion to Substitute.

The facts and legal arguments are adequately presented in the briefs, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D.Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, defendant's Motion to Substitute is DENIED. Defendant's Renewed Motion for

Judgment as a Matter of Law is GRANTED in part, and DENIED in part.

## I. BACKGROUND

Throughout 1988, plaintiff David Mroz alleges that defendant T. Darrell Lee engaged in a series of actions which resulted in plaintiff's lapsing back into alcoholism and losing his financial interest in a number of businesses. The end result, according to plaintiff, was a divorce from his wife as well as filing for a bankruptcy in 1990.

On April 11, 1991, plaintiff filed suit against defendant in this Court on the following claims: Count I, intentional infliction of emotional distress; Count II, tortious interference with business relationships—Joggle Tool; Count III, tortious interference with business relationships—condominium; Count IV, tortious interference with business relationships—plaintiff's accounting practice; Count V, breach of fiduciary duty to Tubby's Sub Shops of Florida, Inc.; Count VI, breach of fiduciary duty to Martin Tool.

In his complaint, plaintiff alleges a litany of conduct by defendant which he claims was "extreme and outrageous." Included are allegations that, upon plaintiff's release from an alcoholic treatment program, defendant sent plaintiff a "welcome home" present, which included a bottle of alcohol; that defendant encouraged the repossession of plaintiff's car and boat; that defendant chased and attacked plaintiff; that defendant kicked and dented plaintiff's car; that defendant told plaintiff that he would break the legs of his daughter; that defendant made threatening phone calls to plaintiff's residence; and that defendant filed criminal charges against plaintiff, to which plaintiff eventually plead *nolo contendere.*

On February 10, 1992, defendant filed a Motion for Summary Judgment, contending that, assuming the Michigan Supreme Court recognized such a cause of action, none of the various allegations state a claim that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized commu-

nity." *Warren v. June's Mobile Home Village & Sales, Inc.,* 66 Mich.App. 386, 239 N.W.2d 380 (1976). This Court agreed.

In a May 22, 1992, Opinion and Order, the Court held that defendant's alleged conduct was not extreme and outrageous as a matter of law. This Court granted defendant's motion with respect to Counts I and II.[1] Plaintiff then moved for entry of final judgment on Count I, thereby permitting immediate appeal of this determination to the Sixth Circuit pursuant to Fed.R.Civ.P. 54(b).

The Court granted plaintiff's motion on August 6, 1992, and the issue of dismissal of Count I was certified for appeal. Following oral arguments, the Sixth Circuit reversed the dismissal and remanded the case to this Court for further proceedings, 5 F.3d 1016.

Defendant thereafter filed a Second Motion for Summary Judgment, which the Court denied on June 1, 1994. The remaining three counts in this action thereafter proceeded to trial in October, 1994. The jury returned a verdict for the plaintiff on Count IV—Loss of Accounting Practice for $50,000.00 and for the plaintiff on Count V—Breach of Fiduciary Duty for $15,000.00. The jury also found defendant liable on Count I—Intentional Infliction of Emotional Distress, but was hung on the issue of damages.

Now before the Court are two defense motions. The first seeks to have the Court substitute the Bankruptcy Trustee for the plaintiff in the instant action. The second is Defendant's Renewed Motion for Judgment as a Matter of Law, or in the alternative, for a New Trial.

## II. OPINION

### A. Motion to Substitute Bankruptcy Trustee

Defendant filed the instant motion on January 30, 1995 seeking to have the Trustee from plaintiff's 1991 Florida Bankruptcy action substituted for plaintiff as the real party in interest. Defendant contends that cause of action is the property of the estate, and

---

1. Plaintiff had previously stipulated to dismissal of Count III of his complaint.

therefore the Trustee is the appropriate party.

Plaintiff relies on this Court's previous Opinion of July 15, 1991, and contends that the Trustee has failed to object in time to be considered the party in interest. Plaintiff contends that the matter is not the defendant's concern.

On the contrary, defendant must insure that any judgment is paid to the proper party, in order to be satisfied. Plaintiff's argument is short-sighted in light of the fact that the U.S. Bankruptcy Court for the Southern District of Florida ruled, on December 13, 1994, that the instant cause of action was not specifically described in bankruptcy pleadings, and any judgment entered herein is to become property of the Estate.

■ The Court, however, also finds it significant that defendant has waited until this late date—after a trial on the merits—to file such a motion. More importantly, the Court notes that the Trustee has *not* petitioned to be substituted as plaintiff in the instant matter. The Trustee is clearly aware of the instant situation, as he has petitioned the Bankruptcy Court to order the plaintiff to turn over to the Estate the $65,000 awarded by the jury following trial.

Fed.R.Civ.P. 25(c) states:

Transfer of Interest. In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party....

Rule 25 sets out a discretionary standard for the Court to determine whether a party should be substituted. It also allows the original party to continue the action. Accordingly, due to the post-trial status of the instant case, and because the Trustee has not petitioned to be substituted, the Court shall not order substitution. Accordingly, defendant's motion is DENIED.

In the interests of justice, however, the Court will recognize the December 13, 1994, Order of the U.S. Bankruptcy Court for the Southern District of Florida, which orders that any judgment be turned over to the Estate.

## B. Renewed Motion for Judgment as a Matter of Law

### 1. Standard of Review

■ The standard for granting a RMJML is the same standard as the prior JNOV:

Whether the evidence is sufficient to create an issue of fact for the jury is solely a question of law to be determined by the court. The standard in passing on that question is the same whether it arises in the procedural context of a motion for directed verdict or of a motion for judgment notwithstanding the verdict. It is the same in the trial court and on appeal.

Wright & Miller, *Federal Practice and Procedure:* Civil § 2524; *see also* Notes of Advisory Committee, 1991 Amendment. The District Court has the power to grant a JNOV "to protect against completely unjust and unsupportable [sic] results." *Douglass v. Eaton Corp.,* 956 F.2d 1339, 1343 (6th Cir. 1992). The standard set forth by the Sixth Circuit is that:

... the court must view the evidence in a light most favorable to the non-moving party, giving the non-moving party the benefit of every reasonable inference that could be drawn from the evidence. If the evidence is such that reasonable persons could differ, the question is one for the jury, and judgment notwithstanding the verdict is improper.

*J.C. Wyckoff & Assoc. v. The Standard Fire Ins. Co.,* 936 F.2d 1474, 1483 (6th Cir.1991). Stated another way, a JNOV is appropriate only if "viewing the evidence in the light most favorable to the party opposing the motion, a reasonable trier of fact could draw only one conclusion." *Douglass, supra (citing Hill v. Spiegel, Inc.,* 708 F.2d 233, 237 (6th Cir.1983)). Judgment notwithstanding the verdict is appropriate as a matter of law when the evidence produced at trial fails to establish an element necessary to plaintiff's cause of action. *Id.*

## 2. Intentional Infliction of Emotional Distress

The Court first notes that, following oral argument, the Sixth Circuit determined that a genuine issue of material fact existed, warranting further proceedings. The Circuit Court held that plaintiff had "sufficiently alleged extreme and outrageous conduct for the purposes of the tort of Intentional Infliction of Emotional Distress under Michigan common law." *Mroz v. Lee,* 5 F.3d 1016, 1020 (6th Cir.1993). The Court stated that

in examining the totality of the circumstances ... paying particular attention to whether there is an abuse of a relationship which puts defendant in a position of actual or apparent authority ... a reasonable person might infer an abuse of such a relationship or a preying upon Mroz's peculiar susceptibilities.

*Id.* at 1020. In light of the holding, which reinstated Count I of plaintiff's complaint, this Court denied defendant's renewed Motion for Summary Judgment, and proceeded to trial.

In his complaint, plaintiff asserts that defendant, beginning in May of 1988 and continuing throughout that year, intentionally acted to inflict emotional distress on plaintiff. The Sixth Circuit was particularly concerned with the litany of conduct alleged in the Complaint, including:

— [1] upon Mroz's release from an alcoholism treatment program, sent Mroz a "welcome home" present which included a bottle of alcohol;

— [2] put Mroz in situations where Mroz would resume consumption of alcohol after a hiatus following a bout with alcoholism;

— [3] encouraged, promoted and arranged for the repossession of Mroz's Corvette, and subsequently purchased it and resold it to Lee's own daughter;

— [4] enticed Mroz to move his accounting offices to the Martin Tool business premises, and proceeded to cause the removal of Mroz's client files and then evicted Mroz without legal process;

— [5] hired Mroz's only full-time certified public accountant and bookkeeper;

— [6] encouraged, promoted and arranged for the repossession of Mroz's boat;

— [7] told clients and friends of Mroz that Mroz was a drug user and had stolen money from Tubby's and Martin Tool;

— [8] filed false criminal embezzlement charges against Mroz;

— [9] after having conducted the aforementioned activities, called Mroz and said, "Now, I've got you where I want you, mother-fucker. I going to get everything you have. I'm going to watch you squirm" '

— [10] chased and physically attacked Mroz on the premises of Martin Tool;

— [11] kicked and dented the door of Mroz's van and struck the driver's side window while Mroz was in the van;

— [12] with knowledge that Mroz's daughter was a gymnast, told Mroz that "he would break her legs" '

— [13] "har[ ]assingly and threateningly" telephoned Mroz's residence over 250 times;

— [14] called Mroz's mother and encouraged her to sever all emotional and financial ties with Mroz;

— [15] used his "political influence" to ensure that Mroz was bound over for trial on the embezzlement charges mentioned above; and

— [16] encouraged and promoted the prosecution of Mroz for embezzlement by various means, including taking the investigating authorities fishing.

5 F.3d 1016, 1017.

It is undisputed that during the trial on the merits, plaintiff failed to offer *any* evidence with regard to allegations (1), (15) and (16). Plaintiff's Br., pp. 2, 6. In addition, upon review of the Court's trial notes and transcripts, the Court finds that there was no evidence offered regarding allegation (6), the repossession of plaintiff's boat, or allegation (12), that defendant threatened plaintiff's daughter with harm. The Court will address the remaining eleven allegations in turn.

With regard to allegation (3), plaintiff's claim that defendant encouraged, promoted and arranged for the repossession of Mroz's Corvette, the evidence admitted differed

markedly from plaintiff's allegation. Testimony from the SERF Credit Union employees established that the Corvette was repossessed pursuant to "normal banking policy," to wit: at the time of the repossession, plaintiff had left the Credit Union with no current address or telephone number, and had relocated the vehicle out of the state in violation of the loan agreement. Wilfred Janisse, President/CEO of SERF and Valerie Podell, a Collection Agent, also testified that due to plaintiff's poor credit history, the repossession was in the best interests of the bank. His account, while up-to-date at the time of the repossession, had only recently been brought up-to-date, after having been months behind.

Defendant was contacted by the Credit Union because he was listed as a reference on the loan documents, and merely gave an address where the vehicle might be located. The defendant did, in fact, purchase the vehicle, after making one of the four bids received for the repossessed vehicle.

With regard to allegation (4), that defendant enticed Mroz to move his accounting offices to the Martin Tool business premises, and proceeded to cause the removal of Mroz's client files and then evicted Mroz without legal process, the evidence also failed to support the claim. Plaintiff, as well as his former employee, testified that at the time of the relocation, plaintiff was being evicted by his previous landlord. Only plaintiff's testimony related to changing locks, and both plaintiff and the employee testified that plaintiff ultimately moved his files to his home—not that he was locked out of the office and prevented from working. Plaintiff's brief acknowledges that he was "asked to leave," rather than "evicted without legal process" as he had earlier contended.

Defendant did hire Karen DeLuca, an employee of plaintiff's and a certified public accountant and bookkeeper, as alleged in (5), above. Ms. DeLuca, however, testified that she left plaintiff's employ because plaintiff "could not handle the business." She testified that he was missing appointments and losing clients. She also testified that she was not happy working for plaintiff, and that during her tenure, two of her paychecks had been returned for insufficient funds.

With regard to allegation (7), that defendant told clients and friends of Mroz that Mroz was a drug user and had stolen money from Tubby's and Martin Tool, the evidence was also insufficient. Plaintiff did not produce a single former client or former friend of plaintiff to testify that they had severed any type of a relationship with plaintiff due to comments made by the defendant. Plaintiff did produce Joseph Jelnick, a business associate of Joggle Tool, who testified that defendant made the statements alleged, but that he did not believe the statements, and they had no affect on his relationship with plaintiff. On cross examination the witness also testified that he had no knowledge of the fact that plaintiff had alcohol problems.

In allegation (8) plaintiff alleged that defendant filed false criminal embezzlement charges against Mroz, which resulted in a plea of *nolo contendere*. In the Macomb County action in question, the prosecuting attorney swore out a warrant, and the court, following a preliminary examination, bound the defendant over for trial on a felony count. It is clear that a private citizen cannot make out a criminal charge, and there was no claim that the prosecutor acted improperly. Plaintiff's original claims that defendant used "political influence" or took authorities fishing were, essentially, withdrawn.

Plaintiff also alleged that defendant har[ ]assingly and threateningly" telephoned Mroz's residence over 250 times. Plaintiff's testimony at trial instead indicated that defendant called 2–3 times a day during a time when their business was failing. Defendant testified, uncontradicted, that his calls were an attempt to locate plaintiff, who failed or refused to return telephone messages. There was no evidence offered that these calls contained threats, or were made simply to harass the plaintiff.

In light of the limited evidence ultimately proffered by plaintiff, Mroz's substantiated allegations are limited to four of the sixteen with which the Sixth Circuit was concerned. Those include: that a physical altercation, albeit significant, occurred between plaintiff and defendant on the premises of Martin

Tool; a threat to plaintiff, along with comments made to Joseph Jelnick; a telephone call to plaintiff's mother, and the filing of a criminal complaint for embezzlement. It is noteworthy that plaintiff could show nothing improper about the embezzlement complaint, and that plaintiff's relationship with his mother was unaffected by the telephone call.

■ While it is clear that there is no love lost between the parties to the instant action, it is equally clear to the Court that a vast majority of the allegations contained in plaintiff's Complaint were not borne out by the evidence presented. In light of the evidence produced at trial, and viewing the evidence in the light most favorable to plaintiff the Court finds that a reasonable trier of fact could draw only one conclusion. *See Douglass, supra, (citing Hill v. Spiegel, Inc.,* 708 F.2d 233, 237 (6th Cir.1983)). That conclusion is that, in examining the totality of the circumstances and paying particular attention to whether there is an abuse of a relationship, no reasonable trier of fact could find that plaintiff has sufficiently proven extreme and outrageous conduct for the purposes of the tort of Intentional Infliction of Emotional Distress under Michigan common law.

Judgment as a matter of law is appropriate when the evidence produced at trial fails to establish an element necessary to plaintiff's cause of action. In the instant action, the Court finds that plaintiff has failed to establish the "extreme and outrageous conduct" element of plaintiff's claim. Defendant is therefore entitled to judgment as a matter of law with regard to Count I—Intentional Infliction of Emotional Distress.

### 3. Loss of Accounting Practice

Plaintiff's claim in Count IV—Loss of Accounting Practice, involves the allegations that defendant enticed Mroz to move his accounting offices to the Martin Tool business premises, and proceeded to cause the removal of Mroz's client files and then evicted Mroz without legal process; that defendant hired Mroz's only full-time certified public accountant and bookkeeper; and that defendant told clients and friends of Mroz that Mroz was a drug user and had stolen money from Tubby's and Martin Tool.

■ Plaintiff's complaint for loss of the accounting practice fails to establish *four* of the essential elements: (1) that plaintiff has a business relationship with a third party at the time of the claimed interference; (2) that the relationship had a reasonable likelihood of future economic benefit; (3) that defendant intentionally interfered with the relationship; and (4) that the defendant's conduct caused a third party to disrupt or terminate the relationship.

As noted above, the evidence offered at trial was insufficient to support the specific allegations made. The evidence was therefore insufficient to make out the elements of the tort. First, plaintiff's move into and out-of the Martin Tool offices were not under the circumstances that he alleged. He was not "enticed," rather he was evicted from his previous location. He was not "evicted," he was asked to leave, and did so.

Next, plaintiff did not offer the testimony of any former clients to support the allegations that defendant had spoken to them, much less that there had been a future expectancy, that they had taken their business elsewhere, or that they had done so due solely or partially to defendant's comments.

Finally, plaintiff failed to meet the element of "intentional interference." Plaintiff offered no evidence that the charges filed in Macomb County were either false or improperly brought. Moreover, plaintiff's former employee testified not that she was "stolen away," but that she left due to the fact that plaintiff "could not handle the business," was missing appointments and losing clients. She conspicuously *did not* testify that these problems were due to the defendant, rather they were due to the plaintiff.

Because plaintiff has failed to even make out a *prima facie* case—the evidence produced at trial failing to establish four elements necessary to plaintiff's cause of action—judgment as a matter of law is appropriate. In the instant action, the Court finds that plaintiff has failed to establish the elements of intentional interference with the accounting practice. Defendant is therefore entitled to judgment as a matter of law with

regard to Count IV—Loss of Accounting Practice.

#### 4. Breach of Fiduciary Duty

The operation of the Tubby's Submarine Shop franchises in Florida was the subject of plaintiff's Breach of Fiduciary Duty claim in Count V. The nature of the fiduciary duty owed—both plaintiff and defendant were directors and shareholders—is not disputed. Defendant now contends that the evidence at trial did not support the conclusion that defendant's actions were in violation of that duty.

In support of this claim, plaintiff offered evidence of the management contracts for defendant's daughter and son-in-law, and offered testimony challenging the business decisions made with regard to Tubby's. Plaintiff specifically challenged the refusal of a $100,000.00 offer for sale of the shops. Defendant responds only that plaintiff was in bankruptcy and would not have received any portion of sale proceeds.

In light of the previously noted standard set out for judgment as a matter of law, and taking the evidence in favor of the nonmoving party, the Court cannot find that the jury's verdict was improper or unreasonable with regard to Count V. Accordingly, defendant's motion is DENIED with regard to Count V—Breach of Fiduciary Duty.

### III. CONCLUSION

For the above stated reasons, the Court finds that, following a trial on the merits, defendant is entitled to judgment as a matter of law as to plaintiff's Count I—Intentional Infliction of Emotional Distress, and Count IV—Loss of Accounting Practice. The Court also finds that defendant is not entitled to judgment as a matter of law as to plaintiff's Count V—Breach of Fiduciary Duty.

Defendant's Renewed Motion for Judgment as a Matter of Law is, therefore, GRANTED IN PART and DENIED IN PART. Judgment shall be entered for defendant on Counts I, II, III, IV, and VI. Judgment shall be entered for plaintiff on Count V, in the amount of $15,000.00 plus interest. Pursuant to the Order of the U.S.

Bankruptcy Court for the Southern District of Florida, the Judgment is to be turned over to the Estate.

IT IS SO ORDERED.

### JUDGMENT

IT IS ORDERED AND ADJUDGED that this action is hereby DISMISSED pursuant to the Memorandum Opinion and Order dated April 19, 1995.

Dated at Detroit, Michigan, this 19th day of April, 1995.